Sara Lesende v. Police Officer Arnold Borrero Mr. Scott. Thank you, Your Honor. May it please the Court, John Scott, Hardin, Cunliffe, McKean, and Paletto for the defendant, Appellant, City of Newark. Your Honor, if I may, reserve five minutes for rebuttal. That request will be granted. Your Honor, if I may, start at the second jury verdict in September of 2012. I think that will best demonstrate why I believe a new trial is required in this matter. There's no dispute, or I think should be no question, that the second verdict of $4 million was excessive, and Judge Debovoir recognized that and started his comments with if a $2.7 million verdict was deemed to shock the Court's conscience, how can $4 million not shock the conscience? So I think this Court should reject the cross-appeal in that regard. And what I want to emphasize about the second verdict is when you look at the remittitor standard, I think the important language is it should be fixed at the maximum amount that a reasonable jury could award. And I emphasize reasonable jury. And the Tormentia case, I think, phrases it differently and uses the word irrational. Let's get to that second verdict. The second verdict was handed down in September of 2012. And that trial was a trial on damages only.  And the jury there says $4 million. City of Newark, because the City of Newark's the only one who's a defendant before that jury, correct? Correct. City of Newark, you owe the Lascendis $4 million. Correct. Okay. Now, and you made a motion for remittitor. Correct. All right. But there was no conditional remittitor order entered, was there? Conditional? I'm sorry. Conditional? There was no conditional remittitor order entered. Judge Debravar vacated the prior remittitor and then he reentered. But he had to do something before he vacated the prior remittitor, didn't he? Well, respectfully, Your Honor, I would say no. Effectively, what he was doing in vacating the $4 million award, which is what he did. Didn't he first have to vacate the $4 million award? He did. And I think that's tantamount to a remittitor because there is no other basis. Yeah, but it wasn't conditional. I don't know what Your Honor means by conditional. By conditional, I mean a conditional remittitor is we're going to remit the verdict from one number to another number, but the plaintiff has the opportunity to accept it or ask for a new trial. I would agree with Your Honor in that sense of he did not make it conditional upon affording her 30, 60, or 90 days to accept it or reject it. And that's an interesting, I guess, procedural aspect of this case about what it is. Interestingly, nothing. It's her Seventh Amendment right. Her Seventh Amendment right to have a jury trial. And it can't be vacated unless it's remitted or she has a right to a new trial. And that's my point, Your Honor, is in essence it was remitted. While he may not have said remitted, when you look at his decision, that's what he was doing. He was remitting it. And with all due respect. Remitted it. Remitting it to what? To $2.7 million. He didn't give her a chance to have a new trial if she didn't want to take it. Admittedly, that's an error in what he did. And that's one of the issues that I think I was raising with you in terms of when I used the phrase concocted this. And I think in fairness to Judge Debovoir, he threw himself on the sword because he was trying to avoid a third trial. What do you mean concocted it? You went along with it. You suggested that he went along with this and agreed to go along with the $2.7 million prior verdict instead of the $4 million verdict. Respectfully, Your Honor, that's incorrect. What would be incorrect? How would you phrase your conduct when this was broached by the court? When the discussion came up, the Assistant Corporation Counsel indicated to the court that she couldn't agree to anything. She needed to speak with Corporation Counsel. And respectfully, the transcript indicates the response is actually coming from Mr. Kobin, not Corporation Counsel. She couldn't agree to that. And with all due respect, the maximum amount of a verdict at that point that had been fixed was the $750,000. There's no discussion of remitting it back to $2.7 million that the city of Newark's trial attorney at that point was agreeing to. And the plaintiff didn't say that she would take it or not take it? There was nothing from her? I believe that's correct, Your Honor. Although the plaintiff, through counsel, implied that they would take the $2.7 million. No, Judge, I don't know that I'd say that because you have a cross appeal that's also here looking for four. No, but if in fact that's the case, though. But didn't the plaintiff in front of Judge Debevois at least imply that $2.7 would be acceptable? I don't believe that's the case. That's clear from the record she did. She went along with the $2.7. As a matter of fact, if you asked her today, she would take the $2.7. You know that, don't you? I don't know that, Your Honor. You suspected, though. Whether I suspected or not is really immaterial, I think, to what I think this Court faces, which was a remittitor in essence being one verdict being remitted to a prior verdict that had been determined to be excessive. That we understand. But assuming it were clear either then or even now that she would take the $2.7 million, that would take care of the Seventh Amendment issue, correct? Your Honor, I don't think there is a Seventh Amendment issue. Well, let's assume that we think there is. I think Gasparini allows this Court and certainly the District Court to set an upper limit on verdicts. And I think the Court, it's not taking away a Seventh Amendment right in that decision. I think the Court recognized that. That's the point of appellate tribunals and judges are supposed to make sure that a verdict is rationally related to the evidence. In effect, if you say that the Court can and did set an upper limit, it set an upper limit at $700,000. $750,000, Your Honor, I believe. Excuse me, $750,000. Judge Debovar followed the correct standard and in remitting the amount, recognized that he had to fix it at the maximum amount that a reasonable jury could award. And that's why I believe the second, that's why I started at the second verdict, because I think it's important in the sense of the only fact that changed between verdict one and verdict two was the rendering of the second verdict. I don't think this Court should establish a precedent where a verdict that is deemed to be unreasonable, the product of an unreasonable jury, can then be used to rationalize an award. And that's what I meant by Judge Debovar threw himself on the sword. It wasn't improvident. He reviewed it not once but twice. There was a motion for reconsideration of the remitter. Mr. Scott, let me ask you this. If we sent this case back to Judge Debovar and said, consider the city's motion for remitter that was made at the end of the second trial, wouldn't that be the approach that should properly be taken? And Judge Debovar at that point could then determine what the proper number was, whether it was 2.7, 750,000 or some other number, and the plaintiff could say accept or reject. And unfortunately for Judge Debovar and for the system, there could be a third trial. I think that's a form of relief that this Court could grant. I mean, isn't that the clearest way to deal with this? It may or may not be, Your Honor. I paused because I have a second concern, which is the second issue I have, which is what I think the city was held vicariously liable for the liability and there was no apportionment. I think counsel requested it, and JA572 is the appendix reference where she requested apportionment. It's immediately before the directed verdict and the jury charge. I think she preserved the record. All right. In making a motion for remitter, which clearly you did at the end of the second trial, don't you make such a motion with a risk? Because if the plaintiff accepts, doesn't that end the case? Yes, that would have ended the case had she accepted it. Okay, so if something went wrong in the first trial, something went wrong in the second trial that prejudiced your client, you don't have an appeal. Correct. Okay, but that's one of the risks of making a remitter motion. Absolutely a risk. Okay, whereas if the court on its own granted remitter, you would still be able to preserve. So I would think you may still have your appellate rights. I think that's correct, Your Honor, and I guess I would just add that I don't think we can ignore the assumption that the court had already fixed the maximum amount of that verdict at $750,000. That's an important consideration when a municipality is making those determinations. Fixing an amount at a level, in this case $750,000, isn't that in effect a denial of the plaintiff's Seventh Amendment right to a trial by jury? No, Your Honor. Because it seems to me it's almost a capped jury. And I think that's what Gasparini addresses. I think Gasparini is saying we need a judicial ability to monitor whether there is a rational relationship between the verdicts or not. And I think Gasparini, the Supreme Court, rejected the argument that review on remitter was, in fact, a Seventh Amendment violation. We could very easily. You asked the court, the record is clear, to enter final judgment in the matter. And the plaintiff, although I don't know what their position is, indicated that they would take the $2,700,000. And you invited the court to enter a final judgment. Why can't we look at this as a case of invited error by you as well as by the plaintiff and say that's it. You asked the court to do this and you got what you asked for. You cannot now appeal and say the court should have done what you invited the court to do in the first place. Judge, I think what the trial attorney misapprehended probably was the jurisdictional issue in terms of getting to this court. Also an issue I think should trouble this court. She invited the court to enter a final judgment. No question about it. I don't disagree that she was trying to avoid a third trial to bring the liability and damages issues to this court. In fairness, Judge Debovoir said really she didn't recognize the jurisdictional issue that he couldn't just enter the judgment. And I think that's what led to this mechanism of vacating an award and remitting it to the prior award which had been deemed excessive. Any way you want to put it, both you and the plaintiff invited the district court to do exactly what the district court did. Now, where does it lie for either of you to now come to the court of appeals and say the district court should have done what it did? Well, you asked them to do it. Judge, I think at the end of the day, while I'll disagree with whether we invited that or not, if the perception is that we did, this court has an obligation to establish what the precedent should be in reviewing the remitter applications. And, candidly, I couldn't find a similar situation in the research I've done. Well, if we read the record and determine that what the district court did was precisely what you and the plaintiff asked the district court to do, then why should we even hear the case and let it go for whether it was done right or wrong? You wanted the court to do that. The court did exactly what you told them to do. Why should we even hear the case? Judge, I don't think we asked. Assuming that we read the record different than you do, I'm telling you right now, I read the record that you, through the lady representing you at that time, asked the court to enter this final judgment. No question about it in my mind. I don't speak for my colleagues. Judge. Okay. I would go back to the mindset at that point in time was the judgment was $750,000. That's what you're operating under the set of facts. But to answer your Honor's question, I think, is I don't think the district court should abdicate a responsibility to address remitter, and I don't think this court should abdicate an opportunity to address the precedent that it wants to establish. You don't want to answer my question. The district court did exactly, the way I read the record, what you and the plaintiffs asked the district court to do. Why don't we hear from the other side? One other thing. Just one other question. You may. You did not object to the charge of the jury on apportionment. You never objected. I agree there was no objection, Your Honor. My explanation of that is Ms. Benjamin had asked for a ruling and a separation of the verdict amounts that had been denied. I don't think it should be held against her for accepting the judge's ruling and an hour later or two hours later or the next day turning around to him and saying, well, I know you ruled against me on my question for separate verdicts. Now I want to object to your jury verdict form. I think she adequately, reading a fair reading of the record, she adequately preserved that issue. Okay. I'll be back on rebuttal. Mr. Coburn? Yes, Your Honors. Thank you. Thank you. It's the plaintiff's position that the city of Newark, throughout post-judgment motions after both trials, got what they asked for. They asked for, after the first verdict, they asked for a new trial on damages only. They didn't ask for a trial on liability after the first trial. Even though the district court discussed the question of new trial on liability? It discussed it in the context of when you've determined to give a new trial on damages, is the liability contaminated in the sense that you would then give a liability trial also? He did not discuss it in the concept of, pursuant to the concepts contained in Rule 50 or 59. He didn't discuss it in terms of insufficient evidence, and he did not discuss it in terms of against the weight of the evidence. But he did say the request for a new trial on the question of liability would be denied. He did, again, but confined to the issue of some sort of cross-contamination of a liability with the damages. What about the second trial? Did they ask for a new trial after the second trial? No. They did not request a new trial. So everything, all the error that they claim now, they haven't preserved. That's my position. They did not. After the second trial, they asked for either a remittance or a new trial on damages. After the second trial? On damages, yeah. After the first trial. After the first trial, they asked for a new trial. They confined it to damages. Obviously, in my opinion, a strategic decision to try and get the liability. They didn't want Wayne Fisher testifying in front of the second jury because they thought that his testimony was so powerful on those liability issues that they were, the city of Newark was of the view that it was contaminated. But to answer Judge Sirica's question, at the end of the second trial, their motion for remitted also contained a request for a new trial on damages, did it not? No. You say no? No, that's not what they did. They asked the judge to remit or to enter, to remit and enter an order and send it up. They did not ask for a new trial. They specifically say, we don't want a new trial. We don't want a new trial is what they said after the second jury verdict. They got what they asked for. They did not want a new trial. They simply did not. Now, whether they understood completely concepts of Seventh Amendment and the fact that we have a right to a jury determination, Judge Debevoise recognized that in their whole argument, that we have a right to a jury determination. And so he gave us a jury determination. He gave us the first verdict. They didn't want a new trial. If you don't want a new trial on damages, your only choice is to take one of the verdicts. There's not a third choice. Okay, but they moved for remitted. They properly moved for remitted. They moved for remitted, yes, Your Honor. In moving for remitted, a proper remitted should give your client an opportunity to accept a reduced amount or have a third new trial. And there was obviously a reduced amount in the sense of going back to the first verdict. Okay, yeah, all right. Now, you don't, you know, the record here is a little bit unclear, but I don't read the record as you really objecting to that. No, I didn't. All right. You were willing to take the two-seven. Well, that's correct, but I also thought there was some intellectual integrity to what the judge did in the sense that I have two verdicts. The city doesn't want to try this case on damages again. They're not moving for a new trial. And if you look at the colloquy, he agrees that when I'm arguing that, look, you can't take away. So if this case went back, or strike that part of it, if the judge had said, look, before I'm going to send this case to the Third Circuit, I'm going to remit the verdict to $2.7 million, and if a plaintiff doesn't want $2.7 million, he's going to get a third, she's going to get a third new trial. If that had happened, we wouldn't be here, would we? No, you wouldn't. All right. If we sent that back, we wouldn't be here. Well... Or would we? Well, it's... Now we might be. Well, here's, if you're sending it back to say, judge, now consider a remitter or a new trial at this stage of the game, I have somewhat of a separate argument on that, and that goes to this concept that what the city is arguing is incorrect because it's simply not logical that there's some cap, some theoretical cap that exists on our damages. There can't be. There simply cannot be. I think he's saying, as I understand the argument, it's the judge knocked the first verdict down because he thought it was simply too high, could not be justified. So if that being the case, you know, how can you end up still with $2.7? The judge had already decided it wasn't high. I understand that, Your Honor. That's... But he didn't have a second jury verdict evaluating the same evidence. So to what extent does a judge take into account a second verdict, which may be higher or may be lower, depending on the circumstances? Does that factor into the judge's... Well, if you're going to... ...reasonableness inquiry, or is it... If you're going... ...outside the, whatever the jury verdict is? If you're going to compare cases to other cases and use that as some sort of an analytical tool, then certainly you're going to look at a verdict, which the city concedes and we concede, is based on the same evidence. A separate jury looking at the same evidence. The problem is the evidence, she had a terrific liability issue here, open and shut, practically. But she didn't have that... She had no real damages here, very little damages. Your Honor, we, of course, dispute that. We dispute that. What was your proof as to permanent injuries, for instance? Your Honor... What proof did you have for permanent injury? The inference that the jury could very well draw, based upon the testimony in this case. This started in 2004. Her second trial was in 2012. And she testified to the lasting impacts of this on her and her lack of security, her inability to trust people, what it had done with her, at least with respect to, although this evidence is boo-hooed, not pursuing a job with Lockheed Martin, and would have been a NASA project, because of this record. What I think happened, Your Honor, in these type of things is, look, I was a prosecutor and you all did criminal cases. A jury looking at somebody who was a citizen parking a car and gets torn out of their life and goes through an eight-year saga, essentially. Now, the criminal aspects and the prosecution of Barrero, which she completely cooperated with the city on, went through 2009. It may be little to us that she's in the hallway in 2009 as a city witness, but she's in the hallway with Barrero being exposed to him and he's ridiculing her again. It may seem little to us, but it may not seem like a little thing to a jury. It may seem small to us or not that significant to us that she had to... Well, but basically what you're saying is whatever figure the jury set is reasonable. If they would have said $10 million, you would have had the same argument, wouldn't you? Your Honor, I understand the first remitter. I get it. Because you look around and you say there's this verdict, this verdict, this verdict, and you make an analysis. I get that. And there wasn't a lot of fight with respect to the judge granting the first remitter. But we have a right to a jury determination. Are we going to keep going back until somebody says, until the court says or the city says, okay, we finally got a verdict that we like? That can't be the Seventh Amendment, Judge. The Seventh Amendment can't be a standard that there's a cap and then the city says, okay, we like... Look, eventually, if you keep running us through it, there will be a verdict that people like on the other side. You'll wind up with an attitude then and the city will be where you are and you will be where they are. Well, we can't get at it. That's the problem. Mr. Coben, as I'm thinking more about this case, Judge Deveboise is a wise jurist. And he sat through not one trial but two trials involving this case. And what is on appeal before us is his vacation of the $4 million verdict and setting and reconsidering his original remitted order and resetting the verdict at $2.7 million. If this case went back and we said, District Court, you didn't enter a proper conditional remitted or you have to give plaintiff an opportunity to accept or go to a new trial and he set that at $2.7 million, it seems to me we have a chance of being back here again with a viable argument perhaps on Mr. Scott's side of him saying there's no way that the case should have been set at $2.7 million when it was set previously at $750,000. So getting back to my comment that Judge Deveboise is a wise jurist, we review this for abuse of discretion. That's correct. Is it inaccurate for us to say, hey, the judge realized he made a mistake the first time. He did what he had to do to rectify that mistake and he set this verdict where it is. You're complaining on one hand that it should go back to $4,000 and Mr. Scott wants it to go to $750,000, but unless there are some errors in this proceeding, maybe that wasn't an abuse of discretion. Your Honor, the issue of the $2.7 million, I don't think he can focus on specific numbers. He entered a judgment, and if you look at it, at least my recollection of the transcript and the colloquy was that, look, I have to take into consideration under the Seventh Amendment what juries do, and we have two jury verdicts, and that's why his words, I think, of his order, it was the remitter, based upon the information that he received from the second jury, was that the remitter was improvidently granted the first time. The first time. And that he should reinstate that. So you're arguing for affirmance, are you not? I sort of put the words in your mouth. Look, we were willing to accept that rule. Well, were you willing to accept it today? Yes. The judge did not make a determination that there was improvident determination the first time around. He never made that determination. No. He, in effect, followed what everyone there asked him to do at their final judgment, and as was obvious then, as it is now, your plaintiff would take the $2.7 and move. Yes. Now, the point is, it's sort of impossible, is it not, to reinstate a verdict that was a determination that was made when there's no finding that the judge made that his prior ruling, that's rule of the case, law of the case, and he can't vacate that unless it was an error or new law or something tremendous that requires him to vacate, and he never made that determination. He made this determination in order to sort of grant appellate jurisdiction and avoid a third trial. Well, I would disagree in this sense, and that is that the judge, again, jury trials mean something. The city asked for another trial. The city got another trial, and they wanted it sanitized. They did not want the liability in that second trial to put themselves in an advantage. They got that advantage, and it didn't work out their way. The judge, Debevoise, then said, which I think is clear, I'm not going to ignore the fact that another jury of citizens, polled at random, decided that this woman was injured to the tune of $4 million, and that's the new information that he got, Judge. He had new information. He had very, very, the most significant information that you can have, I would submit to the court, in a situation like this is the second jury verdict. What could be more informative? Because we think, the judge said, I don't think a reasonable jury could do this. I'm sorry. I don't think a reasonable jury can do this. Well, another jury did it. So, I mean, that begins to inform you as to what a reasonable jury can and can't do. Let me ask you one question here. We obviously see that the police officer, Barrero, was not represented. He had a lawyer originally, and then he was pro se or something, but there's nothing on the record that shows that his lawyer was granted leave to withdraw, and he, as a matter of fact, he wasn't even served with the briefing on this appellate case we have before us. I mean, if this case goes back, doesn't he have to be part of the case? He's on the judgment. He was notified. He did file an appeal, which was dismissed. He filed a pro se. His appeal was dismissed. For the first or the second? Yes, the first, Joe. Okay. But I don't see anything in the record that his attorney was relieved of representing him further. Well, it should be on the record because it was done in open court. There's no order. There's no order relieving the counsel. He fired. He fired his attorney. There was a hearing in court all about it. He asked him and he told him he could proceed. Well, even if he's proceeding pro se, he probably is not even aware of this argument this morning, this afternoon, because there's nothing that he was served with the briefing in this case. Can we enter a judgment against him when he hasn't even had an opportunity to appear before us? Well, you can. He had an opportunity to appear below. I did not notice him on any of my papers, I would admit to that. Neither did the city. Neither did the city. And I don't know, but you're really just leaving a judgment alone. But, you know, the 2.7, the judgment entered, you're not changing anything. He never moved to appeal. We don't have an obligation to tell him that. I don't think that worked. There's an appeal pending. Judge Sirica has a question. Yes. I just want to make sure I understand your position. Is it your position that you accepted the 2.7 million at the end of the second trial and that you would accept it today? Yes. Okay. Okay. All right. Thank you, Mr. Coburn. Mr. Scott? And like we did on the prior case, we took some of your rebuttal time already. It's fine, Your Honor. I'll give you three minutes to rebuttal. I won't even need that. Your Honor, on JA4, which is the amended order, Judge Dababwar says the court concluded on the basis of the record verdict and reconsideration of its earlier remittitor decision that the order of October 7, 2011, granting remittitor, was improvidently entered. So it is in the record that he's finding it was improvident in his own view. There's no analysis for what was improvident about it. He gave the conclusion, but he didn't base it upon any analysis of what he did that was improvident. Well, I don't think it would be correct to assume he's just using the word superfluously. So that's the basis. If he said it was improvident, that automatically makes it improvident. Is that the idea? That's his word assessing his decision. Yes, I think that's correct. And then Your Honor asked me about the Corporation Counsel agreeing or requesting this. And in the transcript, January 22, 2013, on page 21, she specifically says to the court that she couldn't agree to that, that she needed to speak to the Corporation Counsel and was unable to reach her. So I think it's unfair to characterize it as her agreeing with this procedural mechanism to get jurisdiction in the Third Circuit. Thank you, Your Honor. Okay, thank you, Mr. Scott. We thank both counsel, and we'll take the matter under advice.